UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENARBLE CAMPBELL, | No. 2:18-cv-00671-KJM-CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| JOSHUA J. TANTON, et al., | |
| Defendants. | |

      Plaintiff is a state prisoner proceeding through appointed pro bono counsel in this action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on plaintiff's second amended complaint filed by counsel on April 15, 2019 alleging Eighth Amendment deliberate indifference claims against defendants Becerra, Halloran, Largent, Valencia, Martin, Kenton, and Herrera; Eighth Amendment excessive force claims against defendants Tanton, Hammer, Pierce, Rashev, Stanfield, Leech and Manson; and an Eighth Amendment failure to protect claim against defendant Ellin. See ECF No. 43. Currently pending before the court are cross motions for summary judgment with respect to plaintiff's exhaustion of his administrative remedies prior to filing suit. After full briefing on the motions, a hearing was held before the undersigned on October 6, 2021. See ECF No. 116. The matter was deemed submitted. For the reasons explained below, the undersigned recommends granting defendants' motion for summary judgment, in part, only as to defendants Halloran, Largent, Valencia, Manson, Leech and

Stanfield. The undersigned recommends denying plaintiff's motion for summary judgment.

## I. Allegations in the Second Amended Complaint

Plaintiff is a mentally ill inmate who "has alternated between [the] Enhanced Outpatient Program ("EOP") and [the] correctional Clinical Case Management System ("CCCMS") levels of care" within the state prison system. ECF No. 38 at 1. The allegations in the second amended complaint occurred while he was incarcerated at California State Prison-Sacramento ("CSP-Sac"). ECF No. 38 at 4.

In his first claim for relief, plaintiff alleges that defendants Becerra, Halloran, Largent, Valencia, Martin, Kenton, and Herrera were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment during the course of his mental health evaluation and treatment between June and October 2015. ECF No. 38 at 10-11. In his second claim for relief, plaintiff alleges that defendants Tanton, Hammer, Pierce, Stanfield, Rashev, Leech, and Manson used excessive force against him during the course of cell extractions or escorts of plaintiff in June, August, and October 2015. ECF No. 38 at 11-12. Plaintiff also alleges that defendant Ellin failed to protect him from the use of excessive force during his June 19, 2015 cell extraction. ECF No. 38 at 12-13.

## II. Motions for Summary Judgment

### A. Defendants' Motion[1]

Defendants' summary judgment motion contends that plaintiff failed to properly exhaust his administrative grievances with respect to the Eighth Amendment deliberate indifference claims against defendants Halloran, Largent, Valencia; the excessive force claims against defendants Manson, Leech and Stanfield; and the failure to protect claim against defendant Ellin. Specifically, defendants Halloran, Largent, and Valencia contend that plaintiff's health care grievance did not challenge their asserted deliberate indifference because it was limited to complaints that Dr. Martin ordered plaintiff back to his cell despite his suicidal thoughts. See

---

[1] Defendants present no argument in their motion for summary judgment pertaining to defendant Hammer. Nor do they request that summary judgment be entered for defendant Hammer on the exhaustion issue. See ECF No. 106-1 at 7. Therefore, the court will not issue a ruling with respect to defendant Hammer.

2

Grievance No. SAC-HC-15031282. While this health care appeal mentioned defendant Valencia it only did so in the context of referring to prior cell extractions and was not sufficient to alert the prison that Valencia was deliberately indifferent to his serious mental health needs.

Defendants Manson, Leech, and Stanfield assert that the only grievance plaintiff submitted against them concerned a Rules Violation Report ("RVR") that was issued to plaintiff and did not complain of their use of excessive force two years earlier. Additionally, the grievance pertaining to the issuance of the RVR was untimely as to the use of force that occurred on October 20, 2015. Therefore, the excessive force claims stemming from this incident were not properly exhausted according to defendants.

Defendant Ellin also seeks summary judgment because s/he was not specifically named in the grievance concerning the cell extraction on July 19, 2015 involving the use of excessive force by defendant Tanton. Defendants argue that a Rules Violation Report that listed Ellin was served on plaintiff before he filed his grievance and he was therefore required to identify this defendant by name in his inmate appeal according to CDCR regulations.

By way of opposition, plaintiff asserts that he submitted administrative grievances with enough information to identify defendants Halloran, Largent, Valencia, Manson, Leech, Stanfield, and Ellin so as to constitute the proper exhaustion of his claims against them. ECF No. 112. Plaintiff submits that the relevant CDCR regulations do not require a prisoner to name specific prison officials in an administrative grievance. ECF No. 112 at 2. But, rather, "CDCR regulations only require that [p]laintiff mention all facts known and available in a grievance to identify the involved staff members." Id. (citing Cal. Code Regs. tit. 15 § 3084.2(a)(2)(a)(3)-(4)). With respect to defendant Ellin, plaintiff's Appeal Log No. SAC-15-02037 stated that both the "Sgt. [and] Lt. who overseed [sic] the cell extraction are in violation as well." Id. at 4 (citing ECF No. 108-1 at 25). This information was sufficient to grieve the actions of defendant Ellin who ordered the cell extraction on the date at issue. ECF No. 112.

Plaintiff further contends that Appeal Log No. SAC-P-17-03161 contained all the facts known and available to plaintiff so as to properly exhaust his excessive force claims against defendants Manson, Leech, and Stanfield. ECF No. 112 at 4. This grievance specifically

identifies these defendants by name.  Specifically, plaintiff complains about "being struck in the head with leg irons by C/O J. Leech."  ECF No. 107-2 at 22.  The grievance also lists defendants Manson and Stanfield as taking part in the cell extraction.  ECF No. 107-2 at 22.

Lastly, plaintiff asserts that all available facts regarding the deliberate indifference claims against defendants Halloran, Valencia, and Largent were reported in Appeal Log No. SAC-HC-15-031282 which requested that the mental health staff be held liable for the injuries he received from the July 17, 2015 cell extraction that occurred after he was denied mental health treatment.  ECF No. 112 at 5-6.  Because these defendants were all involved in forming plaintiff's mental health treatment plan for his suicidal ideation, plaintiff submits that he properly exhausted his administrative grievances.  Id.

In reply, defendant Ellin asserts that plaintiff was provided with an RVR that referred to Ellin's involvement in the June 19, 2015 cell extraction being grieved.  ECF No. 113 at 2.  Because he had this information but did not include it in the grievance, plaintiff failed to properly exhaust his administrative remedies with respect to the claim against defendant Ellin.  Defendants Manson, Stanfield, and Leech argue that Appeal Log No. SAC-P-17-03161 was untimely with respect to the October 20, 2015 cell extraction and therefore does not constitute proper exhaustion of administrative remedies.  ECF No. 113 at 3.  These defendants also contend that the substance of this 2017 administrative appeal was limited to challenging plaintiff's RVR and not their use of excessive force from 2015.  Id.  With respect to Appeal Log No. SAC-HC-15-031282, defendants contend that it only challenged a doctor's decision to return plaintiff to his cell after discussing his suicidal thoughts.  ECF No. 113 at 3-4.  While defendant Valencia is mentioned in this appeal, plaintiff merely complains about the truthfulness of the doctor's statements and not the lack of mental health treatment provided.  Id.  This administrative appeal was not sufficient to challenge plaintiff's mental health treatment plan formulated by defendants Halloran, Valencia, and Largent.  Id.

**B. Plaintiff's Motion**

In a separately filed motion for partial summary judgment, plaintiff asserts that he properly exhausted his administrative remedies concerning his claim of excessive force against

defendant Tanton, Pierce, Rashev, Manson, Stanfield, Leech, and Ellin.  ECF No. 107.  While four of these defendants are addressed in defendants' motion for summary judgment, three of them are raised for the first time by plaintiff.  However, the factual issue being raised in plaintiff's summary judgment motion is an affirmative defense.  See Jones v. Bock, 549 U.S. 199, 204 (2007); Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (emphasizing that a failure to exhaust is an affirmative defense which must be raised and proven by the defendant).  In this context, ruling on the presence or absence of an affirmative defense that these three defendants did not even raise would be the equivalent of issuing an advisory opinion.  As this court is not in the business of issuing advisory opinions on matters that are not properly placed in dispute, the undersigned recommends denying plaintiff's motion for summary judgment as improperly filed.[2] See Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000) (emphasizing that the role of courts "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").

### III. Legal Standards

**A. Summary Judgment Standards Under Rule 56**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials…."  Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion,

---

[2] In light of this recommendation, the court finds it unnecessary to rule on defendant Pierce's request to withdraw or amend his response to plaintiff's request for admissions pursuant to Rule 36(b) of the Federal Rules of Civil Procedure.  See ECF No. 111 at 5.  The request was filed in opposition to plaintiff's motion for summary judgment and was not raised as a separate and independent motion.

5

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner must exhaust his administrative remedies before he commences suit. McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Compliance with this requirement is not achieved by satisfying the exhaustion requirement during the course of a civil action. See McKinney, 311 F.3d 1198 (9th Cir. 2002). Failure to comply with the PLRA's exhaustion requirement is an affirmative defense that must be raised and proved by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). In the Ninth Circuit, a defendant may raise the issue of administrative exhaustion in either (1) a motion to dismiss pursuant to Rule 12(b)(6), in the rare event the failure to exhaust is clear on the face of the complaint, or (2) a motion for summary judgment. Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006).

In order to defeat a properly supported motion for summary judgment based on a prisoner's failure to exhaust pursuant to 42 U.S.C. § 1997e(a), plaintiff must "come forward with some evidence showing" that he has either (1) properly exhausted his administrative remedies before filing suit or (2) "there is something in his particular case that made the existing and generally available remedies unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5) (9th Cir. 1996)); Jones, 549 U.S. at 218. "Accordingly, an inmate is required to exhaust

7

those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)).  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014).  If there is at least a genuine issue of material fact as to whether the administrative remedies were properly exhausted, the motion for summary judgment must be denied.  See Fed. R. Civ P. 56(a).

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by Albino, 747 F.3d at 1168-69.

**IV.   Statement of Undisputed Facts[3]**

As a general matter, it is not the practice of this court to rule on individual evidentiary matters in the context of summary judgment.  To the extent that the court relies on evidence that has been objected to, the court has only considered evidence in opposition to summary judgment that is admissible.  See Fed. R. Civ. P. 56(c)(4); see also Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).

During the events at issue in the present lawsuit, plaintiff was an inmate at CSP-Sac. Defendants' Statement of Undisputed Facts ("DSUF") at ¶ 1.  Likewise, at all times relevant to the instant proceeding, defendants were employed by CDCR and worked in various capacities at CSP-Sac.  DSUF at ¶ 2.  As relevant to the pending motions, defendant Ellin was employed as a Correctional Lieutenant.  ECF No. 38 at ¶ 12.  Defendants Becerra, Halloran, Largent, and Valencia were members of the mental health treatment team that created plaintiff's specific mental health treatment plan on June 17, 2015.  ECF No. 112-1 at ¶ 18 (Plaintiff's Response to

---

[3] All facts are undisputed unless otherwise noted.

8

Defendants' Statement of Undisputed Facts).

Plaintiff's original complaint in this action was filed on March 23, 2018 using the prison mailbox rule. See ECF No. 1 at 18; see also Houston v. Lack, 487 U.S. 266 (1988). Accordingly, plaintiff was required to exhaust his administrative remedies prior to that date. See 42 U.S.C. § 1997e(a).

### A.  CDCR Administrative Appeals Procedure

At the time of the events at issue, all CDCR prisons, including CSP-Sac, used an inmate grievance procedure with three levels of review. DSUF at ¶ 3. Upon receiving an inmate's grievance, the appeals coordinator at the prison determines whether it has been properly submitted, or must be rejected or cancelled because of errors; omissions; duplication of a prior appeal; presentation of multiple, unrelated issues; or other violations of the governing regulations. DSUF at ¶ 3. If the grievance is accepted for review, it is processed at the first level of review which may sometimes be bypassed. DSUF at ¶ 4. If the inmate is not satisfied with the first level response or if the appeal is bypassed at that level, the inmate may submit the grievance to the second level of review. DSUF at ¶ 4. If the inmate is not satisfied with the second level response, he or she may elevate the appeal to the final third level of review which is conducted by the Office of Appeals in Sacramento. DSUF at ¶ 4.

Inmate grievances are assigned a log number by the prison where the grievance originated, and are logged into a computer-based tracking system called the Inmate Appeals Tracking System ("IATS"). DSUF at ¶ 7. The specific log number includes the prison at which the inmate grievance arose. DSUF at ¶ 7. As relevant here, inmate appeals that arise at CSP-Sac include the letters "SAC" in the appeal log number. Id. The IATS contains the following information for each inmate appeal: the name and CDCR number of the inmate filing the grievance; the assigned grievance log number; the date received; the grievance issue; the review level; the date each review level was completed; and, the disposition. Id.

### B.  Appeal Log No. SAC-B-15-02037

Plaintiff filed Appeal No. SAC-B-15-02037 alleging that Officer Tanton struck him in the head with a baton during a cell extraction on June 19, 2015. DSUF at ¶ 9; ECF No. 108-1 at 23-

26. This appeal was received by the CSP-Sac Appeals Office on July 9, 2015. DSUF at ¶ 9. Defendants assert that this inmate appeal did not mention any other staff members who took part in, or ordered, the cell extraction. DSUF at ¶ 9. Plaintiff counters that this grievance did mention the Lieutenant who oversaw the cell extraction. ECF Nos. 108-1 at 25, 112-1 at ¶ 9.

The parties agree that plaintiff submitted this appeal to all three levels of administrative review. CDCR denied this appeal at the third level of review on November 19, 2015. ECF Nos. 112-1 at ¶ 9; ECF 108-1 at 26.

Defendants contend that plaintiff was served on June 30, 2015 with a copy of a Rules Violation Report referring to Lt. Ellin's involvement in this cell extraction, although plaintiff disputes that.

### C. Appeal Log No. SAC-B-02634

Appeal No. SAC-B-15-02634 "pertain[ed to] a June 20, 2015 excessive force being carried out by C/O M. Hammer during a cell extraction." ECF No. 108-1 at 33, 35; DSUF ¶ 11. While the parties agree that plaintiff submitted this appeal to the third level of administrative review, they disagree about the date that it was received by the Office of Appeals.[4] See DSUF ¶ 11, ECF No. 112-1 at 7. This grievance does not mention any other correctional staff involved in the cell extraction. ECF No. 108-1 at 33-36.

### D. Appeal Log No. SAC-P-5-03174

In Appeal No. SAC-P-15-03174 plaintiff alleged that while he was being escorted on August 22, 2015, defendant Rashev used excessive force against him by forcibly slamming him to the ground and that defendant Pierce did not intervene or attempt to stop the excessive force. DSUF at ¶ 12; ECF Nos. 108-1 at 38-41; 112-1 at ¶ 12. This appeal was received in the CSP-Sac Appeals Office on September 22, 2015. DSUF at ¶ 12. Plaintiff submitted this grievance to all

---

[4] Plaintiff submits that the Appeals Office received this grievance on August 28, 2015. ECF No. 112-1 at 7 (Plaintiff's Response to Defendants' Statement of Undisputed Facts). However, the multiple date stamps on the grievance form itself are completely illegible. See ECF No. 108-1 at 33. Defendants submit that this grievance was received on February 4, 2016 based on the Declaration of D. Contreras even though that date is not listed on the IATS print out attached to the declaration. See ECF No. 108-1 at 4. The court finds it unnecessary to resolve this factual dispute as both dates occurred prior to plaintiff's filing of the instant suit.

three levels of administrative review. ECF No. 108-1 at 38-41. It was received by the Appeals Office on February 16, 2016. DSUF at ¶ 11.

### E. Appeal Log No. SAC-P-04392

In Appeal No. SAC-P-04392, received by the SAC Appeals Office on November 17, 2015, plaintiff alleged that Sergeant Morton pointed a 40 mm launcher at plaintiff's face during an October 21, 2015 cell extraction. DSUF ¶ 13. Defendants assert that this grievance did not allege that the 40 mm launcher was fired, or that plaintiff suffered an injury as a result of its presence. DSUF ¶ 13. Plaintiff counters that this grievance indicates that he "was terrified" that the 40 mm launcher was going to be used and that this constitutes an injury. ECF No. 112-1 at ¶ 13; ECF No. 108-1 at 45. This grievance also alleged that pepper spray was used during plaintiff's cell extraction, but it does not indicate by whom. ECF No. 108-1 at 45. Plaintiff contends that "the use of pepper spray frustrates one's ability to identify by name the person" deploying it. ECF No. 112-1 at ¶ 13.

### F. Appeal Log No. SAC-P-15-02516

In Appeal No. SAC-P-15-02516, plaintiff complained about an incident that occurred on July 4-5, 2015 at CSP-Sac which resulted in him being pepper sprayed through a food port during a cell extraction. DSUF at ¶ 10; ECF No. 108-1 at 28-31. According to plaintiff, his grievance also alleged that "the C/O's" repeatedly yelled at him to "stop trying to hang yourself" during the cell extraction even though he was not attempting to hang himself. ECF No. 108-1 at 30. While the parties agree that this grievance does not identify any of the correctional officers involved by name, plaintiff contends that it was not possible for him to do so based on the nature of the incident itself, i.e. being sprayed through a small opening in his cell door. DSUF at ¶ 10, ECF No. 112-1 at ¶ 10. The parties further agree that this appeal was pursued through the third level of administrative review, although they disagree as to the date that it was received by the Office of Appeals. DSUF at ¶ 10, ECF No. 112-1 at 5-6. As plaintiff indicates, the file stamp from the Office of Appeals indicates that this grievance was received on August 3, 2015. ECF No. 108-1 at 28.

/////

### G. Appeal Log No. SAC-P-17-03161

In opposition to defendants' summary judgment motion, plaintiff indicates that he was served with Rules Violation Report ("RVR") Log No. PSU-15-10-1050 on October 27, 2015 which described his cell extraction by defendants Manson, Stanfield, and Leech on October 20, 2015. ECF No. 112-1 at ¶¶ 42-47. In the RVR, defendant Leech is described as applying leg irons to plaintiff. ECF No. 112-1 at ¶ 44. Defendant Manson is described as striking plaintiff two times with his baton: first on the top of plaintiff's head and then on his forehead. ECF No. 112-1 at ¶ 45. Defendant Stanfield is described as restraining plaintiff's wrist while leg restraints were applied. ECF No. 112-1 at 27.

Plaintiff submits that he filed an inmate appeal that was received by the CSP-Sac Appeals Office on August 8, 2017 and assigned Log No. SAC-P-17-03161. ECF No. 112-1 at ¶¶ 49-50. This appeal complained that plaintiff received 6 staples to his head due to being struck with leg irons by defendant Leech. ECF No. 112-1 at ¶ 50. Plaintiff also complained that defendants Manson and Stanfield participated in the cell extraction. ECF No. 112-1 at ¶¶ 51-52. This inmate appeal was submitted to all three levels of administrative review with a final denial being issued on January 16, 2018. ECF No. 112-1 at ¶¶ 53-58.

### H. Health Care Appeal Log No. SAC-HC-15-031282

Plaintiff additionally asserts that his inmate health care appeal Log No. SAC-HC-15-031282 was received by the CSP-Sac Appeals Office on July 17, 2015. See ECF No. 112-1 at ¶¶ 19-20; ECF No. 112-2 at 34-37. In this appeal, plaintiff complained that a mental health doctor whom he spoke with on June 20, 2015 about feeling suicidal told plaintiff that he would have to return to his cell because there was no room and that no one was going to kill him. ECF No. 112-1 at ¶ 21; ECF No. 112-2 at 34-37. CDCR's first level appeal denial identified this doctor as defendant Martin. ECF No. 112-1 at ¶ 22; ECF No. 112-2 at 38 (Institution Response for First Level HC Appeal). Plaintiff submitted this health care appeal to all three levels of administrative review. ECF No. 112-1 at ¶¶ 23-26, 28-29; ECF No. 112-2 at 38-45. The third level of review denied plaintiff's health care appeal on March 9, 2016. ECF No. 112-1 at ¶ 29; ECF No. 112-2 at 44-45.

## V.      Analysis

The court finds that defendants have carried their initial burden of proving the availability of an administrative remedy.  Therefore, the burden shifts to plaintiff to come forward with evidence that there was something in his particular case that made the existing administrative remedies effectively unavailable to him or that he has otherwise properly exhausted his claims with respect to the remaining defendants who were not named in his grievance.  Williams v. Paramo, 775 F.3d at 1191.

While the Supreme Court has held that the PLRA does not specifically require an individual defendant to be identified by name in an administrative grievance in order to properly exhaust a claim, this may be required by the particular procedural rules that a prisoner must follow.  Jones v. Bock, 549 U.S. 199 (2007).  In Woodford v. Ngo, 548 U.S. 81, 89-96 (2006), the Supreme Court emphasized that proper administrative exhaustion of a claim requires a prisoner to comply with all of the prison's deadlines and other critical procedural rules in order to allow the agency to address the complaint on the merits.  Section 3084.2(a)(3) of Title 15 of the California Code of Regulations requires an inmate to "list all staff member(s) involved and shall describe their involvement in the issue" being grieved.  This includes listing "the staff member's last name, first initial, title or position, if known… [and] [i]f the inmate… does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020).  The Ninth Circuit Court of Appeal has said that a prisoner exhausts administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits at each available step of the administrative process."  Reyes v. Smith, 810 F.3d 654, 658 (9th Cir. 2016).  In Reyes, the Court found that plaintiff properly exhausted his administrative remedies with respect to two doctors on the prison's Pain Management Committee even though they were not specifically named in plaintiff's administrative grievances.  810 F.3d 654.  In reaching this conclusion, the Court found that there must be a "sufficient connection" between the claim in the administrative grievance and the

1 unidentified defendants to allow prison officials to have "notice of the alleged deprivation" and an "opportunity to resolve it." Reyes, 810 F.3d at 959.

In this case, defendant Ellin argues that plaintiff failed to comply with the regulation that required all staff members to be named in the administrative grievance. See Cal. Code Regs. tit. 15, § 3084.2(a)(3) (repealed June 1, 2020). However, plaintiff's grievance did put the prison on notice of the specific participation by the Lieutenant who ordered plaintiff's cell extraction which was sufficient for the prison to identify the staff member involved, i.e., defendant Ellin. See Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (emphasizing that "[u]nder the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.'") (citations omitted). Thus, plaintiff has demonstrated that he properly exhausted his administrative remedies with respect to the claim against defendant Ellin by including the officer's job title in Appeal Log No. SAC-B-15-02037. As a result, the undersigned recommends denying defendant Ellin's motion for summary judgment.

With respect to defendants Manson, Leech, and Stanfield, the issue before the court is whether plaintiff's 2017 inmate grievance properly exhausted his excessive force claims against them relating to the October 20, 2015 incident. See Grievance Log No. SAC-P-17-03161. Defendants argue that prison officials did not screen out this grievance as untimely because a fair reading of it indicated that plaintiff was challenging the issuance of the RVR against him and not defendants' conduct in 2015.

The undersigned finds this argument persuasive in light of the timing of plaintiff's filing of the appeal as well as the contents thereof. While the RVR was issued to plaintiff on October 27, 2015, his disciplinary hearing was not held until December 2, 2016. See ECF No. 107-2 at 18. Plaintiff was found guilty of the RVR which was "approved by the Chief Disciplinary Office on June 27[,] 2017, and the appellant received his final copy on June 30, 2017." ECF No. 107-2 at 18. Plaintiff filed Appeal Log No. SAC-P-17-03161 within 30 days of that decision and it was first received on August 8, 2017. The timing of this appeal supports defendants' argument that the appeal was challenging the disciplinary finding and not the use of force from 2015. See Fosselman v. Dimmer, No. 1:12-cv-01302, 2016 WL 2898114, 2016 U.S. Dist. LEXIS 65622 at *

14

17-18 (E.D. Cal. May 18, 2016) (finding that the timing and context of the appeal challenged only the RVR and did not constitute a separate claim for failure to protect) (citing Stewart v. Brown, 584 Fed. Appx. 613 (9th Cir. 2014)).  Moreover, the contents of this appeal also suggests that it was complaining about the disciplinary finding of guilt based on the correctional officers' testimony.  Id.  Plaintiff mentioned defendants Manson, Leech, and Stanfield in this appeal form as evidence that CDCR staff was lying in the course of his disciplinary proceedings: "No one: Sgt. Morton, C/O Leech, C/O Howard-Hammer, C/O Manson, C/O Stanfield, C/O Shinnette, R.N. T. Frudde, etc. seems to not recall, don't remember, or just stated 'No" to the receiving of the '6 staples to my head' (left side) due to being struck in the head with leg irons by C/O J. Leech."  ECF No. 107-2 at 22.  When read in context, the appeal references defendants Manson, Leech, and Stanfield only to point out the inconsistencies in the testimony at the disciplinary proceeding.

The only close question in this appeal relates to defendant Leech.  In the action requested portion of the inmate appeal form, plaintiff further states that he wants "C/O J. Leech [] held accountable for striking me in the head with the leg irons."  ECF No. 107-2 at 22.  However, by waiting until the conclusion of the disciplinary hearing to appeal defendant Leech's actions from nearly two years earlier, this grievance was not timely filed.  See Cal. Code Regs. tit. 15 § 3084.8(a) (repealed June 1, 2020) (stating that inmate appeals must be submitted within thirty days of the alleged incident); see also Woodford v. Ngo, 548 U.S. at 90-93 (finding that proper exhaustion requires complying with the prison's applicable procedural rules).  Therefore, the undersigned finds that Appeal Log No. SAC- P-17-03161 did not properly exhaust plaintiff's administrative remedies with respect to his claims against defendants Manson, Leech, or Stanfield.

To the extent that plaintiff is arguing that he should be excused from exhausting his administrative remedies for his excessive force claims related to the use of pepper spray based on the difficulty of identifying individual(s) deploying it, there is no case law cited, nor is the court aware of any through its independent research, carving out such a broad-based exception.  As a result, the undersigned finds that plaintiff has not demonstrated that "there is something in his

particular case that made the existing and generally available remedies unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" Williams, 775 F.3d at 1191 (quoting Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)).  In fact, plaintiff acknowledges that he is not arguing that he is excused from the exhaustion requirement with respect to any of his claims.  See ECF No. 112 at 6-7.

With respect to the claims against defendants Halloran, Largent, and Valencia involving inadequate mental health care for his suicidal ideation, plaintiff argues that he properly exhausted his administrative remedies because they were all involved in forming his mental health treatment plan.  However, Health Care Appeal Log No. SAC-HC-15-031282 only complained about a mental health doctor's decision to return plaintiff to his cell despite his assertion of being suicidal on June 20, 2015.  This doctor was sufficiently described in the appeal for CDCR to identify the doctor as defendant Martin.  However, plaintiff does not mention his mental health treatment plan nor any other mental health staff who he was alleging was deliberately indifferent to his need for mental health treatment in this administrative appeal.  Therefore, the court finds that the undisputed material evidence even viewed in the light most favorable to the prisoner shows that plaintiff failed to exhaust his administrative remedies on the deliberate indifference claims. Defendants Halloran, Largent, and Valencia are entitled to summary judgment as to these claims. Albino, 747 F.3d at 1172.  Accordingly, the undersigned recommends granting the motion for summary judgment as to defendants Halloran, Largent, and Valencia.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 106) be granted in part and denied in part as explained herein.
2. Plaintiff's cross motion for summary judgment (ECF No. 107) be denied as improperly filed.
3. Defendants Halloran, Largent, Valencia, Manson, Leech, and Stanfield be dismissed without prejudice based upon plaintiff's failure to exhaust the administrative remedies with respect to the claims against them.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 19, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/camp0671.msj.exhaust.final.docx